IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM VERALDI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| FLYING FOOD GROUP, LLC., | ) | |
| | ) | **Jury Trial Requested** |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, WILLIAM VERALDI, by and through his attorney, LISA KANE, of LISA KANE & ASSOCIATES, and complaining of Defendant, FLYING FOOD GROUP, LLC., states as follows:

### PRELIMINARY STATEMENT

1. This is an action seeking redress for violations of rights guaranteed to Plaintiff by the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff seeks mandatory injunctive relief and damages to redress Defendant's discriminatory employment practices.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection of and to redress deprivations of rights secured by 29 U.S.C. § 621 et seq., 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

3. Venue is proper under 28 U.S.C. § 1391 (b)(1) and (2).

## PARTIES

4. Plaintiff, WILLIAM VERALDI, is a sixty (60) year old Christian, male, citizen of the United States, who resides in Arlington Heights, Illinois. Plaintiff was born in the United States, on June 26, 1956.

5. Defendant, FLYING FOOD GROUP, LLC., is a Delaware corporation, which has continuously, and does now employ more than fifteen (15) employees, is engaged in an industry that affects commerce and continues to do business in Illinois.

## PROCEDURE

6. Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity ("EEOC") on July 15, 2016. The EEOC issued Plaintiff a Notice of Right to Sue on August 16, 2016. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum withing ninety (90) days of the receipt of said Notice. Plaintiff initiated this action in the appropriate forum within ninety (90) days.

## COMMON FACTUAL ALLEGATIONS

7. Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

8. Plaintiff began his employment with Defendant in January of 2016 as an Executive Chef at the O'Hare Airport (ORD) location. As an Executive Chef, Plaintiff's duties included: creating menus, cooking food, scheduling, hiring, firing and handling special catering projects. As Executive Chef, Plaintiff was responsible for approximately 150 employees.

2

9. At all times material hereto, Plaintiff performed to Defendant's reasonable satisfaction, as evidenced by, without limitation, Plaintiff's lack of discipline, and favorable performance and evaluations, and any assertion to the contrary is pretextual.

10. In April of 2016, Defendant's General Manager, Steve Kerschner, who is in his fifties (50), informed Plaintiff that Moe Elmaher would fill a temporary position for the summer season.

11. In June of 2016, General Manager Steve Kerschner promoted Moe Elmaher, a substantially younger, Muslim, male to the position of Senior Executive Chef. As Senior Executive Chef, substantially younger, Muslim, Moe Elmaher, became Plaintiff's direct supervisor.

12. On information and belief, Senior Executive Chef, Moe Elmaher, Plaintiff's direct supervisor, is approximately forty-five years old (45) and thus at least fifteen (15) years younger than Plaintiff.

13. Plaintiff's direct supervisor, Moe Elmaher, was not born in the United States.

14. Immediately after substantially younger, Muslim, Moe Elmaher, became Plaintiff's direct supervisor, Elmaher stripped Plaintiff of his supervisory and managerial duties. Elmaher denigrated Plaintiff to duties of hourly employees, such as portioning food into trays, rather than Plaintiff's previous duties, cooking, making schedules and overseeing 150 employees.

15. On June 27, 2016, Defendant's substantially younger Production Manager, Rommel, met with Plaintiff, Senior Executive Chef, Moe Elmaher, and Sous-Chef, Miguel Martinez. At this meeting, Production Manager Rommel told those in attendance, "Bill [Plaintiff] used to be the boss. Moe is now the boss and whatever Moe says goes."

16. As Plaintiff's direct supervisor, Moe Elmaher, a Muslim male who is approximately fifteen (15) years younger than Plaintiff, treated Plaintiff less favorably than he treated Plaintiff's

3

similarly situated younger, non-American born and Muslim coworkers by giving Plaintiff longer work assignments and a substantially larger work load.

17. To illustrate, prior to June 2016, Plaintiff worked Monday through Friday, from 6:30 a.m. to 3:00 p.m. In June 2016, Plaintiff's substantially younger, Muslim, direct supervisor, Moe Elmaher, changed Plaintiff's schedule. After Elmaher became Plaintiff's direct supervisor, Plaintiff worked ten (10) hour shifts, Sunday through Thursday, from 10:00 a.m. to 8:00 p.m.

18. On numerous occasions, Defendant's substantially younger, Senior Executive Chef, Moe Elmaher, a follower of Islam, singled Plaintiff out. Elmaher often called Plaintiff on the telephone, demanding Plaintiff report to work on his days off. Elmaher frequently demanded Plaintiff report to work earlier than his scheduled start times. On information and belief, Elmaher did not demand Muslim, non-American born employees report to work early and did not demand Muslim, non-American born employees report to work on their days off.

19. Further, Defendant's Muslim, Senior Executive Chef, Moe Elmaher, purposely scheduled Plaintiff to work nine (9) consecutive days without a single day off. On information and belief, Elmaher scheduled every other similarly situated, younger, non-Christian, non-American born, salaried chef only two (2) to five (5) consecutive working days between a day off.

20. Moe Elmaher, Defendant's significantly younger, Muslim, Senior Executive Chef, drastically increased Plaintiff's shift hours and subjected Plaintiff to a much larger workload than other similarly situated, younger, non-Christian, non-American-born employees. To illustrate, while chefs are scheduled to prepare food for one to three airlines, on average, Elmaher assigned Plaintiff to handle nine (9) airlines in a single shift.

21. Plaintiff's Muslim, direct supervisor, Moe Elmaher, asked Plaintiff what religion he

followed. When Plaintiff said he was a Christian, Elmaher disdainfully responded that Plaintiff would relate to him "better if he was a Muslim."

22. Upon learning Plaintiff was a Christian, Defendant's Senior Executive Chef, Moe Elmaher, a Muslim, deliberately scheduled Plaintiff to work on Sundays, knowing Plaintiff wanted to observe his Christian faith by attending church on Sunday mornings. By intentionally scheduling Plaintiff to work on Sundays, Elmaher made it difficult for Plaintiff to practice his religion, Christianity, as Plaintiff was unable to attend church services.

23. When Plaintiff, a Christian, told his Muslim supervisor, Moe Elmaher, that he wanted to attend church and have bible worship every Sunday morning, Elmaher responded, "too bad! If you were Muslim, you wouldn't have this problem... your choice, your consequence." Further, Elmaher condescendingly told Plaintiff, "you're working on Sundays! Get over it!"

24. Defendant's Senior Executive Chef, Moe Elmaher, a follower of Islam, deliberately undermined American-born, Christian, Plaintiff's authority to the employees working under Plaintiff. Specifically, Elmaher undermined Plaintiff to Omar, a Muslim employee who reported directly to Plaintiff, according to Defendant's chain of command. Elmaher informed Plaintiff and Omar that Omar would report directly to Elmaher because of their religious connection.

25. Moe Elmaher told Plaintiff, "Omar will now report to me because we are both Muslim and can relate better." Elmaher deliberately circumvented Defendant's hierarchy by demanding Omar report to him.

26. Upon seeing a Christian cross hanging from Plaintiff's car mirror, Plaintiff's direct supervisor, Moe Elmaher, a Muslim, belligerently demanded that Plaintiff remove the cross immediately. Elmaher further expressed his disdain when he adamantly commanded that Plaintiff,

5

a devout Christian, not display the cross when his car was in Plaintiff's designated work parking space.

27. When Plaintiff, a Christian, refused to remove the Christian cross dangling from his car mirror, Plaintiff's Muslim, direct supervisor, Moe Elmaher, flagrantly displayed his hostility towards Plaintiff by deliberately parking his car in Plaintiff's designated, labeled parking spot. When Plaintiff asked Elmaher about why he kept parking in Plaintiff's spot, Elmaher snidely responded, "Now people walking by don't have to look at your Christian cross!"

28. Moe Elmaher, Defendant's Muslim Senior Executive Chef, knows Plaintiff is a Christian and often made snide, demeaning and derogatory comments about Christianity to Plaintiff, such as:

   a. Belligerently demanding Plaintiff remove a Christian Cross hanging from the rear-view mirror of Plaintiff's car when the car was parked in the employee parking lot;

   b. Snidely telling Plaintiff he did not relate to him because he was "not a Muslim;"

   c. Brusquely commenting that Islam is peaceful, insinuating that Christianity was not;

   d. Telling Plaintiff that Plaintiff would not have a conflict with his work schedule and church schedule "if [Plaintiff] was Muslim;"

   e. Saying "Jesus is not" God; and

   f. Antagonizing Plaintiff by sitting by Plaintiff while Plaintiff ate lunch and belligerently quoting from the Koran, even after Plaintiff continuously

begged him to stop.

29. On information and belief, Defendant's Senior Executive Chef, Moe Elmaher, who is Muslim, told employees that Omar, a substantially younger, Muslim, employee, was going to be promoted to Plaintiff's position because Omar "is his people," referencing Omar's Muslim faith.

30. Senior Executive Chef, Moe Elmaher, Plaintiff's substantially younger, direct supervisor, routinely made veiled threats about Plaintiff's future employment, through several passive aggressive remarks that it was "good that [Plaintiff] had [his] Uber/Lyft driver job to fall back on" if he "couldn't do this job," referencing Plaintiff's age.

31. Defendant's supervisor, a Muslim male, who is more than fifteen (15) years younger than Plaintiff, described his management philosophy to Plaintiff and co-workers as "sugar in the mouth and murder on the brain." Several times throughout Plaintiff's employment, Elmaher threatened, "sugar in the mouth, murder on the brain," insinuating harming employees who reported to him.

32. Plaintiff and co-workers fearfully interpreted Defendant's Senior Executive Chef, Moe Elmaher's "sugar in the mouth, murder on the brain" statement as a threat that Elmaher would kill employees who did not do what Elmaher demanded.

33. On April 30, 2016, Plaintiff called the police regarding Elmaher's menacing threats about having "sugar in the mouth and murder on the brain."

34. On information and belief, Plaintiff's, Muslim, direct supervisor, Moe Elmaher, treats Muslim, non-American born employees more favorably than non-Muslim, American born employees.

35. For example, on information and belief, Defendant's Senior Executive Chef, Moe

Elmaher, who is Muslim, provides overtime opportunities to Muslim employees while denying such opportunities to similarly situated non-Muslim employees.

36. Further, on information and belief, Plaintiff's direct supervisor, Moe Elmaher, a follower of Islam, allows Muslim employees to change their schedules whenever they choose and provides Muslim employees with all requested days off, while denying similarly situated non-Muslim, American-born employees their requested days off. For example, Elmaher denied Plaintiff's request to have a day off on the Fourth of July to celebrate America's Independence Day.

37. Further, on information and belief, Defendant's Muslim, Senior Executive Chef, Moe Elmaher, allows Muslim employees, Mustafa, Kihlil and Omar, to choose their assignments and work on special projects, while denying similarly situated, American born, non-Muslim employees these opportunities.

38. On June 17, 2016, Plaintiff's substantially younger, direct supervisor, Moe Elmaher, stripped Plaintiff of one of his primary managerial responsibilities. To illustrate, Elmaher, assigned two substantially younger employees who worked under Plaintiff, Brandon Buckner, who is in his late twenties (20), and Miguel Martinez, who is in his late thirties (30), to create schedules for sixty (60) employees. Prior to June 17, 2016, Plaintiff was responsible for creating the schedules for these specific employees.

39. Defendant's head of Human Resources, James Damron, terminated Plaintiff's employment on July 14, 2016, despite the fact that Plaintiff performed to Defendant's reasonable satisfaction for the entire duration of his employment.

40. When James Damron, of Defendant's Human Resources, terminated Plaintiff, he explained to Plaintiff, "Moe wanted to terminate your employment." Damron did not provide

8

Plaintiff with any other specific reason for terminating Plaintiff's employment.

41. Despite Defendant's Progressive Discipline policy, Plaintiff did not receive any notice, reprimands or write-ups prior to his termination.

42. Any reasons proffered by Defendant for terminating Plaintiff's employment are obviously pretextual.

## COUNT I- 42 U.S.C. § 1981 -NATIONAL ORIGIN DISCRIMINATION

43. Paragraphs one (1) through forty-two (42) are incorporated by reference as if fully set out herein.

44. Plaintiff is an American-born citizen of the United States.

45. On information and belief, Defendant's Senior Executive Chef, Moe Elmaher, was not born in the United States. On information and belief, Elmaher was born and raised in the Middle East.

46. Plaintiff's non-American born, Muslim, direct supervisor, Moe Elmaher, continuously made a slew of demeaning, degrading, spiteful comments about America and the "American system." Elmaher demeaned and demoralized Americans by speaking disparagingly of Americans and American culture, while elevating his "country" and "culture."

47. Moe Elmaher made his disdain for American-born Plaintiff obvious by subjecting Plaintiff to a relentless series of offensive, malicious statements which debased Plaintiff's American culture and American ideals. Elmaher began numerous cruel rants to Plaintiff about the "American system" with a belittling prelude referencing "what's wrong with America" and "what's wrong with Americans."

48. On information and belief, Defendant's Senior Executive Chef, Moe Elmaher, who

9

was not born in the United States, further displayed his extreme animosity for Plaintiff and other American-born citizens of the United States, by frequently referencing harming Americans to Plaintiff in a deplorable manner. For example, following the terrorist attack in Orlando, Elmaher told Plaintiff "they deserved what they got."

49. On July 14, 2016, Defendant terminated Plaintiff's employment, despite Plaintiff continually performing to Defendant's reasonable satisfaction.

50. On information and belief, immediately following Plaintiff's completely unwarranted termination, Plaintiff was replaced by Omar, a non-American born, follower of Islam, despite Omar's numerous disciplinary infractions, including a physical altercation.

51. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of his national origin, American, and have deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981.

52. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, WILLIAM VERALDI, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to be a violation of rights guaranteed to Plaintiff pursuant to appropriate federal law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns,

and all persons in active concert or participation with them, from engaging in any employment practice that unlawfully discriminates on the basis of national origin;

 C. Order Defendant to make whole WILLIAM VERALDI, by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

 D. Order Defendant to pay lost, foregone, and future wages to WILLIAM VERALDI.

 E. Grant Plaintiff the consequential, compensatory, punitive and any other damages that the Court may deem appropriate;

 F. Grant Plaintiff his attorneys' fees, costs, and disbursements; and

 G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT II- ADEA-AGE DISCRIMINATION

53. Paragraphs one (1) though fifty (50) are incorporated by reference as if fully set out herein.

54. Plaintiff's substantially younger, direct supervisor, Moe Elmaher, routinely mocked and degraded Plaintiff based on his age, sixty (60), with deplorable, demoralizing and demeaning comments that Plaintiff was "too old for this job" and that Plaintiff "should find another department to work in, one that has less demands and is less physical."

55. Defendant's Senior Executive Chef, Moe Elmaher, who is approximately fifteen (15) years younger than Plaintiff, derisively taunted Plaintiff because of his age, cruelly saying, "you cannot do this job with that old knee," referencing Plaintiff's knee replacement.

56. When Plaintiff requested a day off for his birthday, his substantially younger supervisor, Moe Elmaher, scoffed and jeered at Plaintiff, saying, "Off? At your age you're lucky you

have a job!"

57. Defendant's Senior Executive Chef, forty-five (45) year-old Moe Elmaher, viciously sneered at Plaintiff that, "this is a short time job for you ... we don't like to pay benefits to someone who may retire," obviously referencing Plaintiff's age.

58. Plaintiff's substantially younger, direct supervisor, Moe Elmaher, routinely ridiculed and degraded Lee, a seventy-year-old (70) employee, based on his age. Elmaher often derisively jeered that Lee is "useless" and "incompetent" simply because of his age. Elmaher's voice dripped with contempt when he spoke of Lee, commenting that Lee was "old," that Lee "cannot do his job" because he is old and that Lee "needs to be replaced." Lee has worked for the Defendant company for over forty (40) years.

59. On information and belief, immediately following Plaintiff's termination, a substantially younger employee, named Omar, assumed Plaintiff's position. On information and belief, Omar is approximately thirty (30) years old.

60. The aforementioned acts and omissions of Defendant constitute unlawful discrimination on the basis of Plaintiff's age, sixty (60) years old, in violation of the ADEA, as amended, 29 U.S.C. § 621 et seq.

61. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits, emotional harm, stress and anxiety.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, WILLIAM VERALDI, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to be a violation of rights guaranteed to Plaintiff pursuant to appropriate federal law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice that unlawfully discriminates on the basis of age;

C. Order Defendant to make whole WILLIAM VERALDI, by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Order Defendant to pay lost, foregone, and future wages to WILLIAM VERALDI.

E. Grant Plaintiff the consequential, compensatory, liquidated and any other damages that the Court may deem appropriate;

F. Grant Plaintiff his attorneys' fees, costs, and disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT III- TITLE VII - RELIGIOUS DISCRIMINATION

62. Paragraphs one (1) though fifty-nine (59) are incorporated by reference as if fully set out herein.

63. Plaintiff's Muslim supervisor, Moe Elmaher, routinely tormented Plaintiff, a Christian, by making several derogatory, demeaning, demoralizing and discriminatory comments about Plaintiff's Christian faith, including:

    a. "If you were Muslim you could pray any time;"

    b. Mocking the cross Plaintiff hung on his car's rear-view mirror by taking Plaintiff's assigned, parking spot and belligerently stating, "Now people

walking by don't have to see your Christian Cross!"

64. On information and belief, immediately following Plaintiff's termination, Plaintiff, a Christian, was replaced by a Muslim employee named Omar.

65. The aforementioned acts and omissions of Defendant constitute unlawful discrimination against Plaintiff because of his religion, Christian, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

66. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages, physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, WILLIAM VERALDI, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to be a violation of rights guaranteed to Plaintiff pursuant to appropriate federal law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice that unlawfully discriminates on the basis of religion;

C. Order Defendant to make whole WILLIAM VERALDI, by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Order Defendant to pay lost, foregone, and future wages to WILLIAM VERALDI.

E. Grant Plaintiff the consequential, compensatory, punitive and any other damages that the Court may deem appropriate;

F.     Grant Plaintiff his attorneys' fees, costs, and disbursements; and

G.     Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT IV- TITLE VII- NATIONAL ORIGIN DISCRIMINATION

67. Paragraphs one (1) though sixty-four (64) are incorporated by reference as if fully set out herein.

68. Defendant's foreign-born, Muslim, Senior Executive Chef, Moe Elmaher, tormented Plaintiff, an American-born, United States citizen, through constant, deplorable and derisive remarks about America, Americans, the United States government and the foundations of American society.

69. As Plaintiff continuously performed to Defendant's reasonable satisfaction throughout his employment, any reasons proffered by Defendant for terminating Plaintiff are simply a pretext for discriminating against Plaintiff on the basis of his national origin, American.

70. On information and belief, subsequent to Plaintiff's termination, Omar, a non-American born, Muslim, assumed Plaintiff's position with Defendant.

71. The aforementioned acts and omissions of Defendant constitute unlawful discrimination on the basis of Plaintiff's national origin, American, in violation of Title VII, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

72. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages, physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, WILLIAM VERALDI, prays for judgment against Defendant

and respectfully requests that this Court:

A. Declare the conduct of Defendant to be a violation of rights guaranteed to Plaintiff pursuant to appropriate federal law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice that unlawfully discriminates on the basis of national origin;

C. Order Defendant to make whole WILLIAM VERALDI, by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Order Defendant to pay lost, foregone, and future wages to WILLIAM VERALDI.

E. Grant Plaintiff the consequential, compensatory, punitive and any other damages that the Court may deem appropriate;

F. Grant Plaintiff his attorneys' fees, costs, and disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

73. Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

Respectfully submitted,

By: s/ Lisa Kane
Lisa Kane, Attorney for Plaintiff

Lisa Kane & Associates

Attorney for Plaintiff
141 West Jackson Boulevard, Suite 3620
Chicago, Illinois 60604
(312) 606-0383
lisakane@sbcglobal.net
Attorney Code No. 06203093